[No. 26136. Department One. September 2, 1936.]

JOHN DAVIS THOMAS, JR., *et al., Appellants,* v. NATIONAL
BANK OF COMMERCE OF SEATTLE *et al.,*
*Respondents.*[1]

[1]Reported in 60 P. (2d) 264.

*Matthew Stafford,* for appellants.

*M. M. Pixley* and *Kerr, McCord & Carey,* for respondents Wheeler *et al.*

*Grosscup, Morrow & Ambler,* for respondents Bevan.

TOLMAN, J.—The appellant John Davis Thomas, Jr., is one of the beneficiaries under a trust created by the will of his grandmother Mattie A. Thomas. He instituted this action to procure the removal of the trustees and to correct a number of claimed irregularities in the administration of the trust. Respondents National Bank of Commerce and George C. Wheeler are the trustees. Others whose names appear as appellants and respondents were ultimately joined as beneficiaries, contingent beneficiaries, or as having some interest in the subject matter. The cause was tried to the court, resulting in a decree disposing of all matters in issue. Certain of the beneficiaries and contingent beneficiaries have appealed while others have not.

The pleadings are voluminous, consisting of the complaint, various cross-complaints, and complaints in intervention, with answers to each, and the only error assigned is one to the effect that the trial court erred in making and entering its decree. Hence, we have

had some difficulty in determining just what questions are now presented for decision. However, having finally concluded that five possible questions should be discussed, we proceed to quote from the decree entered by the trial court, both for the purpose of presenting the necessary facts and as showing the rulings complained of. The facts therein stated are now to some extent admitted, but where disputed they are accepted by us because the evidence does not preponderate against any. Where insufficiently stated, we will enlarge upon or state additional facts as we discuss particular questions.

The pertinent parts of the decree read:

"(Creation of Trust)
"Mattie A. Thomas died in the city of Seattle, King county, state of Washington, on December 9, 1925, being at the time of her death a resident of said city, county and state, and leaving estate in King county, state of Washington, subject to administration therein. Said Mattie A. Thomas died testate, having executed her last will and testament on January 2, 1923, which will was regularly admitted to probate by decree of this court entered on December 15, 1925, in a proceeding entitled 'In the Matter of the Estate of Mattie A. Thomas, Deceased,' No. 38579, in the records of the superior court of King county. The deceased Mattie A. Thomas left real and personal property which was administered in said proceeding No. 38579 of the appraised value of $705,972.91, and left additional estate in the state of Montana which was regularly administered in that jurisdiction. On December 31, 1926, a decree of distribution was duly and regularly entered in said probate cause No. 38579 settling said estate and distributing the residue thereof in trust according to the provisions of the will of said testatrix, John Davis Thomas, Sr., Kathleen Ross Bevan, John Davis Thomas, Jr., and Carroll Graves Thomas are the beneficiaries of the said trust. Kathleen Diane Bevan and John Hubert Bevan are contingent beneficiaries in the event that their mother, Kathleen Ross

Bevan, shall die before the termination of said trust; and John Davis Thomas III is a contingent beneficiary in the event that his father, John Davis Thomas, Jr., shall die before the termination of said trust.

"(Status of Trustees)

"On September 22, 1928, National City Bank of Seattle and George C. Wheeler, as such trustees, commenced an action in the superior court of the state of Washington in and for King county entitled 'National City Bank of Seattle and George C. Wheeler, Plaintiffs vs. John Davis Thomas, et al., Defendants,' No. 213421, for the purpose of having the will of Mattie A. Thomas, deceased, construed in respect to the proper distribution to be made of the income accrued during the administration of the estate from December 15, 1925, to December 31, 1926, and in respect of the compensation to be paid the said trustees for services in administering said trust. In said action the court had jurisdiction of all parties interested in said trust and of the subject matter thereof. Such proceedings were had in said action that on February 26, 1929, a decree was entered therein settling and adjudicating the matters concerning which the trustees sought the instructions of the court. Said decree was not appealed and was and is final. On February 23, 1929, National City Bank of Seattle was regularly consolidated with The National Bank of Commerce of Seattle and Marine National Bank of Seattle and by the decree entered on February 26, 1929, in said cause No. 213421, as well as by operation of law, the defendant, The National Bank of Commerce of Seattle, became the trustee of said trust as successor of National City Bank of Seattle. The National Bank of Commerce of Seattle is now and at all times since February 23, 1929, it has been the regularly appointed, qualified and acting trustee of the trust created by the will of Mattie A. Thomas, Deceased. George C. Wheeler is now and at all times since December 31, 1926, he has been a regularly appointed, qualified and acting co-trustee of said trust. By reason of the proceedings and decrees in said cause No. 38579 and in said cause No. 213421, the beneficiaries of said trust are estopped from question-

ing the authority or status of said trustees, or either of them.

"(Past Compensation of Trustees)

"By the decree entered on February 26, 1929, in said cause No. 213421, the compensation to which the said trustees were entitled up to the date of said decree was finally settled and adjudicated; and said decree further provided for the compensation to be paid the said trustees from the date of said decree until a different rate or basis of compensation should be fixed by the court. The court now finds and decrees that except as hereinafter specifically stated in this paragraph of this decree in respect of lots 11 and 12, block C of Bell and Denny's Third Addition to Seattle, the compensation which has been received by said trustees, and each of them, since the entry of said decree in cause No. 213421 on February 26, 1929, has been the compensation provided for in said decree and in the will of Mattie A. Thomas, Deceased. In respect of said parcel the court finds the compensation received by the trustees for their services prior to January 1, 1931, did not exceed the compensation decreed to be paid by the said decree in cause No. 213421. The court, however, finds and decrees that the trustees have erroneously but in good faith collected and retained compensation in excess of that to which they have been entitled in respect of said lots 11 and 12, block C of Bell and Denny's Third Addition to Seattle during the period from January 1, 1931, to June 30, 1933. During said period the trustees erroneously computed their compensation upon the basis of the unpaid balance due on a certain contract dated August 29, 1929, under which the trustees agreed to sell and one Charles B. De Mille agreed to purchase said real estate for the sum of $150,000. The compensation to be paid the trustees for said period should have been computed upon the basis of the value of said real estate as inventoried 'In the Matter of the Estate of Mattie A. Thomas, Deceased,' No. 38579, increased by the amount of local assessments paid upon said property, making the total value of said real estate for the purpose of computing the trustees' fees $67,215.21. During said period begin-

ning January 1, 1931, and ending June 30, 1933, the trustees collected on the said contract with said De Mille the following installments of interest:

March 2, 1931—Interest $3,900.00
September 1, 1931—Interest 3,900.00

Total.............. $7,800.00

Said property during said period was used partly for business purposes and under said decree in cause No. 213421 the trustees were entitled to compensation in the amount of 8.75% of said total collections. The court finds that by reason of said erroneous computation the trustees have received compensation in the amount of $1,485.66 in excess of the fees properly chargeable according to the terms of said decree, and the said trustees are ordered and required to credit the trust in the amount of said overcharge: that is, The National Bank of Commerce of Seattle is required to refund $848.95 and George C. Wheeler is required to refund $636.71.

"(Future Compensation of Trustees)

"The will of said testatrix provides, 'My trustees shall be allowed such compensation for its or their services as is customary in such cases in the city of Seattle, state of Washington, and in case of dispute as to the amount thereof, it shall be fixed by the superior court of the state of Washington for King county.' The several trust companies operating in the city of Seattle have now currently in effect a scale or schedule of fees adopted by said trust companies as of the 20th day of December, 1933, a copy of which schedule is attached to this decree and made a part hereof. For the future and until the further order of this court, the compensation to be paid the trustees for their services in respect of the assets of said trust other than real estate shall be upon the basis and according to the rates provided in said schedule.

"For the future and until further order of this court, the compensation to be paid the trustees for their services in respect of the administration of the real estate belonging to said trust shall be at the rates provided in said schedule applied to the value of said

real estate as inventoried 'In the Matter of the Estate of Mattie A. Thomas, Deceased,' No. 38579, with the exception that the following reductions are made:

. . . (valuation schedule omitted) . . .

"The fees computed according to the schedule and on the basis herein ordered shall be payable quarterly and shall take effect as of the 1st day of July, 1935. The National Bank of Commerce of Seattle as corporate trustee shall receive as its compensation the full amount of the fees so computed. George C. Wheeler as co-trustee shall be entitled to receive fees equivalent to seventy-five per cent (75%) of the fees to which the corporate trustee is entitled.

"It is further decreed that at any time hereafter any of the parties to this action may under this cause number file a petition with the clerk of this court praying for a revision for the future of such fee basis or schedule. The court shall immediately, upon the filing of such petition, require such notice to be given to the other parties as the court may, in its discretion, consider proper, and after proof of the giving of such notice shall proceed to hear and determine the matters presented by such petition.

. . . . . . . . .

"(Leasehold held by Arthur G. Dunn)

"Mattie A. Thomas, during her lifetime, was the owner of certain real estate situated in the city of Seattle, King county, Washington, described as 'Fractional lots 2 and 3 and lot 6, in block 45, of A. A. Denny's 6th Addition to the city of Seattle.' On the 10th day of August, 1909, Mattie A. Thomas leased said premises to Cline Piano Company for a term of fifty-one (51) years beginning August 1, 1909, at an annual rental of $12,600 per year. Said leasehold estate, after the death of Mattie A. Thomas, was assigned on May 25, 1928, by The Bon Marche to Arthur G. Dunn, who was accepted as lessee by National City Bank of Seattle and George C. Wheeler, then trustees of the trust created by the will of Mattie A. Thomas, Deceased. The rent owing under said lease, amounting to $12,600 per year, was regularly paid until January 1, 1932. During the year of

1932 the sum of $11,550 was paid. During the year of 1933 the sum of $1,000 only was paid on the 21st day of February, 1933, since which time no rent whatever has been paid on said lease. After said rents had become delinquent, Arthur G. Dunn caused to be formed Ansonia Improvement Company, a corporation, under the laws of the state of Washington, to which he assumed to assign said leasehold estate, but said corporation has never been accepted as a substitute lessee by trustees of the trust created by the will of Mattie A. Thomas, Deceased. Taxes on said premises for the year 1934 have been paid, but taxes for the years 1932 and 1933 are unpaid and delinquent. Arthur G. Dunn, or his purported assignee, Ansonia Improvement Company, is now in possession of the premises. Acting on the advice of competent counsel, the trustees have deferred taking any decisive action in respect of enforcing the personal liability, if any, of Arthur G. Dunn on said lease. The court now finds that under the circumstances heretofore affecting said property, the trustees have not been remiss in their duty in not proceeding and that any rights that the trust may have against said Arthur G. Dunn or Ansonia Improvement Company have not been lost. The court further finds that the rights of the said trust, if any, against Arthur G. Dunn should now be asserted, and, accordingly, the trustees are hereby ordered and directed to commence and prosecute legal proceedings to enforce the rights, if any, that the said trust may have in respect of said lease. The court reserves jurisdiction to hereafter fix reasonable compensation to be allowed the trustees' attorneys for conducting such litigation, and to decide whether or not the trustees themselves shall be entitled to any additional compensation for services rendered in connection with such litigation, or a settlement thereof.

"(Filing Reports)

"It is provided in the will of Mattie A. Thomas, Deceased, that 'My trustee or trustees shall biannually file a report showing the condition of the trust in the superior court of the state of Washington for King county, and shall deliver copies of such report to each

of the beneficiaries under said trust who at the time is of the age of majority.' The court finds that the trustees have complied with this provision of the will by furnishing the beneficiaries with regular reports but that said reports were not regularly filed with the clerk of this court, but since the commencement of this action such reports have been filed. The court further finds that the omission to file said reports has not in any wise been prejudicial to said trust or to the beneficiaries thereof, but the trustees are hereby ordered and directed to hereinafter file and deliver said reports semiannually, and in compiling said reports the trustees are directed to show therein the amount of fees retained and how such fees have been computed.

. . . . . . . . .

"The court finds that the trustees in all particulars, except as hereinbefore found in respect of compensation charged for the administration of lots 11 and 12, block C, Bell and Denny's Third Addition to Seattle, have faithfully administered said trust according to the true intent and meaning of the will of Mattie A. Thomas, Deceased, and the several decrees interpreting said will and instructing said trustees, and the beneficiaries of said trust are not entitled to have said trustees, or either of them, removed or to have any other or further relief than that herein expressly provided, it being the intention of this decree to ratify, approve and confirm all of the acts of said trustees and to finally and conclusively settle all matters in controversy or which might be put in controversy between said beneficiaries, or any of them, and said trustees, or either of them, from the commencement of the administration of said trust up to the date of the last trustees' report now on file, to-wit: December 31, 1934, the court, however, reserving in this action or in said cause No. 213421 jurisdiction to make such further orders or decrees as may from time to time be necessary or proper in respect of the future administration of this trust."

The first question raised is as to the status of George C. Wheeler as trustee. The first subdivision

of paragraph X of the will of Mattie A. Thomas bequeaths the bulk of her estate to the National City Bank of Seattle in trust for the uses and purposes specified in the subdivisions immediately following. The seventh subdivision of paragraph X reads:

"It is my will that George C. Wheeler of Seattle serve as a joint trustee with my trustee above named, with equal authority but the title and possession of the trust estate and of its securities and accumulations shall be vested in my first named trustee solely."

The appellants seem to contend that a trust cannot be created except by the vesting of the legal title to the property covered in a trustee; that no title was vested in Wheeler, and that, therefore, he cannot be a trustee.

The title to the property was bequeathed to the bank as trustee, and under that bequest legal title passed and a trust was created. It is not necessary to determine whether the words of the will

". . . so long as said Wheeler shall remain trustee, his joinder shall be necessary in all conveyances or transfers of any part of the trust estate,"

shall prevail over the preceding words excluding him from title and possession. It is sufficient for present purposes to determine what was the intention of the testatrix, and that, reading paragraph X of the will as a whole, is clear and free from doubt. Though, strictly speaking, Wheeler may not in all respects be a trustee as defined by the authorities, yet he is "a joint trustee" or a quasi-trustee charged with all of the duties and entitled to all of the benefits which the will in clear language imposes and bestows. If necessary to sustain the trust, the will would bear the construction that title vested in both trustees. *Caylor v. Cooper,* 165 Fed. 757.

We conclude that, though the language of the will

may be contradictory or lacking in formality, yet the intention being clear, George C. Wheeler is entitled to act as a joint trustee in the manner directed by the will.

2. As already indicated, the National City Bank was named in the will as trustee, and it was so recognized in the decree of distribution. It, together with Mr. Wheeler, entered upon and performed the duties devolving upon the trustees under the will. After the lapse of some time, the trustees brought an action in the superior court of King county, being cause No. 213421, in which a construction of the will in certain particulars was sought. The decree in that case recites that all parties interested were made parties to the action, and that each appeared in the action or was duly served with process. When the decree in that action was about to be entered, the fact that the National City Bank had consolidated with the National Bank of Commerce and that the consolidated business was being carried on under the name of the National Bank of Commerce, was reported to the court, whereupon at the foot of the decree there was added, above the signature of the court, a provision reading:

"At the time of the entry of the foregoing decree, it is made to appear to the court that since the commencement of this action, the plaintiff, the National City Bank of Seattle, has been consolidated with the National Bank of Commerce of Seattle. It is now, with the consent of all the parties to the action, ORDERED that the National Bank of Commerce of Seattle be and is hereby appointed Trustee under the Will of Mattie A. Thomas, Deceased, in place of the plaintiff, National City Bank of Seattle, and that it be substituted in this action and in the foregoing decree in place of the said National City Bank of Seattle."

The National Bank of Commerce thereafter continuously served as trustee without objection from any one

until the present action was brought, almost exactly six years later.

If the recitals in the decree, that all interested persons were parties to the action and that all consented, may be now attacked, a question we do not decide, then, the consolidation of the banks having been approved by the comptroller of the currency, his approval is final and is not here subject to review. *First Nat. Bank v. Murray,* 212 Fed. 140.

But, in either event, by the consolidation, the National Bank of Commerce succeeded to the rights of the National City Bank by operation of law, and if there was anything informal in the record of its right to act as trustee, the present decree properly cures that defect.

Finally, if the National Bank of Commerce had been a *de facto* trustee only, the present decree would, by its terms, properly construed, make it a trustee *de jure,* because it was within the power of the court to appoint if there was a vacancy. *Portland Trust & Sav. Bank v. Rosenberg,* 183 Wash. 681, 49 P. (2d) 467.

3. The third question goes to the acts of the trustees. It is urged (a) that the trustees paid to themselves excessive fees; (b) that the National Bank of Commerce made a secret profit by dealing with the trust; (c) that the trustees caused loss to the trust by the neglect and failure to act in the matter of enforcing the terms of a lease on real property belonging to the trust estate; and (d) that there was a failure to file reports; any or all of which, it is argued, was sufficient cause for the removal of the trustees. These matters are all covered by those parts of the decree which are entitled ''Past Compensation of Trustees,'' ''Leasehold held by Arthur G. Dunn,'' ''Filing Reports,'' and the provisions of the final paragraph quoted. All of these

matters, with one exception presently to be noted, present only questions of fact. A study of the record convinces us that nothing was established reflecting on the good faith of the trustees, and that there is no ground for the removal of either of them.

■ The exception mentioned has to do with the fees claimed by the trustees and allowed by the trial court. The decree in cause No. 213421, entered on February 26, 1929, fixes the trustees' fees at certain percentages of the principal, of stocks, bonds, and mortgages, and fixes the fees of the corporate trustee on real estate belonging to the trust as follows:

"REAL ESTATE

"Annual fee:
  On total value of improved property, without deduction for encumbrances—1/5 of 1%
  On total value of unimproved property, without deduction for encumbrances—1/10 of 1%
"Additional Charges:
  (a) Management of Improved Property
     5% of gross income from property used wholly or partly for business purposes.
     5% of gross income from residential property.
  (b) Management of Unimproved Property
     2½% of amount paid out for general and special taxes."

and to the individual trustee an amount equal to 75% of the annual compensation of the corporate trustee was allowed.

The prior decree, which thus fixed percentages, made no reference to the appraisement and fixed no method of determining values for the purpose of computing the percentages and ascertaining the amount of the fees. The word "value" as used in the decree can only mean the fair and reasonable value at the time the services are rendered and the fee is payable. The trustees seem to have proceeded in good faith upon the

theory that the appraised value must govern until the court, by some appropriate order, might fix different values.

We think the position cannot be upheld. The appraised value is, of course, the fair and reasonable value as of the time it was made, and, conditions remaining the same, it may be the presumptive value for a considerable period of time; but, apparently, here the appraisement was made while the estate was in probate and before the trustees took possession of the property. Years with their changes have intervened, bringing a period of depression which has shattered values generally and especially real estate values. There can now be no presumption that the appraised value is, or that during the past several years it has been, the actual or reasonable value of the real estate belonging to the trust.

The primary duty of a trustee is to deal fairly and justly with his *cestui que trust*. He may not help himself at the expense of the trust estate simply because no one protests. Where, as here, a trustee's fees are to be determined by values, it is the duty of the trustee to fairly fix and determine just and reasonable values before attempting to compute his fee. We do not mean that every slight fluctuation in value calls for a new appraisement, but in times of rapid and extreme changes annual valuations would be but fair, while in more settled times valuations less frequently made should suffice. The trustees should exercise the same good faith in ascertaining changes in value as is required of them in accounting for money received.

The trial court did fix the value of the different parcels of real estate as of the date of its decree. Presumptions do not run backward, and we cannot say that the values thus fixed should control over a period running back to the time of the entry of the decree in

cause No. 213421. The evidence here is in such condition that we do not feel justified in fixing values for the intervening years. This question must be remanded so that further evidence may be taken and the trial court may pass on values and fix the trustees' fees for each of the years which are questioned in this proceeding.

4. What we have just said must be applied to future compensation. The decree fixes a reduced value on many if not all of the parcels of real estate belonging to the trust, and requires that these values shall be used in computing the trustees' fees until the further order of the court. We approve the values as fixed by the decree as of the time the decree was entered, but we cannot approve of those values being used beyond the time when they may remain fair and reasonable values. In other words, the decree should not place a burden upon the beneficiaries of the trust which requires them constantly to keep watch of changing conditions and to promptly report changes in values and petition for relief. The primary duty in this respect rests upon the trustees. That provision of the decree relating to future compensation should be modified to meet these views.

5. Finally, complaint is made of the allowance for attorney's fees to the attorney for the plaintiff below and for the appellants here. The trial court allowed to the attorneys for the trustee $1,000, to the plaintiffs' attorney $750, and to the attorneys for a cross-complainant who has not appealed $750. The combined allowance to those attacking is one-third more than to the defending attorneys, and yet the appellant John Davis Thomas, Jr., urges that the allowance of a less sum to his attorney than was given to those defending shows a spirit of unfairness. We do not think so.

Even if we disregard the allowance to the attorney for the cross-complainant who has not appealed, still the broad attack here made was by the trial court no doubt felt to be unjustifiable. In this, we agree. There was no reasonable basis for an attack on the authority of the trustees, or either of them, and little, if any, cause to ask for removal. That being so, the fee allowance was properly limited to the accounting features of the action. To both attacking attorneys, the allowance was more than the gain to the trust estate. To appellants' attorney, the allowance was slightly more than fifty per cent of the gain. As the decree stood, the allowance was ample, but if, on a retrial of the issue remanded, a further reasonable recovery is had, the court may make a further allowance to appellants' attorney in a sum commensurate with the gain or benefit to the trust estate.

The judgment must be reversed and remanded so far as it affects the trustees' fees for past services. It must be modified as herein indicated as to valuations upon which to compute future fees. In all other respects, it will stand affirmed.

MILLARD, C. J., STEINERT, GERAGHTY, and HOLCOMB, JJ., concur.